Argued and submitted January 18, affirmed June 6, 2001

## Mark BAKER
### and Cindy Baker,
### husband and wife,
*Appellants,*

*v.*

## INFRATECH CORPORATION,
### a California corporation;
### and Industrial Finishes & Systems, Inc.,
### an Oregon corporation,
*Respondents.*

### 9712-09605; A106539

26 P3d 835

Todd A. Bradley argued the cause for appellants. With him on the briefs were William A. Gaylord, and Gaylord & Eyerman, P.C.

Ruth Casby Rocker argued the cause for respondent Infratech Corporation. Thomas S. Moore argued the cause for respondent Industrial Finishes & Systems, Inc. Ruth Casby Rocker filed the brief for respondent Infratech Corporation. With her on the brief was Hoffman, Hart & Wagner, LLP., and joining in the brief was Thomas S. Moore.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiffs appeal from a jury verdict for defendants in this product liability action. Plaintiffs brought this action for damages after plaintiff Mark Baker (Baker) was injured while using a heat lamp manufactured by defendant Infratech Corporation and sold by defendant Industrial Finishes and Systems, Inc. Plaintiffs argue that the trial court erred in giving two of defendants' requested jury instructions, in refusing to give an instruction requested by them, and in refusing to instruct the jury that it had changed a former ruling and had stricken certain testimony. We affirm.

Baker was employed by the City of Portland and worked in its shop. While applying a new coat of paint to a city vehicle, Baker used a SpeedRay heat lamp to dry the paint. There was evidence from which the jury could have found that the heat lamp had been designed in such a way that certain of its electrical components could become loose over time and could come into contact with the metal stand to which the lamp was attached. Evidence also showed that the lamp was designed with a three-pronged electrical cord and that there was a warning on the cord of the lamp instructing that the lamp was only to be plugged into a three-pronged extension cord or socket. On the day of the injury, Baker plugged the heat lamp into the female end of an extension cord that was missing the third prong on its male end. Without the third prong, the cord cannot perform a grounding function. Defendants assert that if the third prong had been in place, the injuries alleged could not have occurred. There is a dispute in the evidence as to whether the altered end of the extension cord was already plugged into the wall when Baker used it or whether he plugged the altered end into the wall. While holding onto the lamp's metal stand, Baker allegedly received a serious electrical shock. This action seeks to recover damages on account of the design of the heat lamp.[1]

Defendants defended against plaintiffs' action on several grounds, including that their product was not defectively designed. They argued that it was unforeseeable that a

---

[1] Plaintiff Cindy Baker alleges a loss of consortium arising out of her husband's injuries.

consumer would use the lamp without a properly grounded cord, especially in light of national safety standards and regulations requiring the use of a grounded receptacle. They also contended that Baker's own misuse caused any injury that occurred because he plugged the lamp into an electrical cord without a proper ground, contrary to the express warning on the lamp's cord.

In a written motion before trial, plaintiffs moved to strike defendants' "affirmative defense of misuse." In their motion, they argued that the allegations contained in defendants' pleading were insufficient as a matter of law to constitute the defense of comparative fault. The court denied the motion.[2] The parties then tried the case before a jury. Defendants requested Uniform Civil Jury Instruction (UCJI) 20.06, which states:

> "Every person has a right to assume that others will obey the law, unless and until that person knows or in the exercise of reasonable care should know otherwise."

Defendants also requested UCJI 48.07, which states, "The defendant is not liable for harm caused by a use which was not reasonably foreseeable." Plaintiffs requested that the trial court give the following instruction:

> "Defendants have alleged that Plaintiff Mark Baker was at fault, and was a cause of his injuries, by misusing the product. A manufacturer of products is required to protect against all reasonably foreseeable uses of the product. Reasonably foreseeable use may be different than intended use, and includes any particular use which should be known to a reasonably prudent manufacturer.

> "A misuse is one which the manufacturer could not reasonably foresee. In order to establish a defense based on misuse, Defendants must prove by a preponderance of the evidence that Plaintiff Mark Baker used or handled the product in a manner so unusual that the average consumer could not reasonably expect the product to be designed and manufactured to contend with it, and therefore, a manufacturer need not have foreseen the use."

---

[2] Plaintiffs do not assign the denial of their motion as error.

The trial court gave defendants' requested instructions as set out above, with one variation. It added to UCJI 20.06 the following sentence: "However, a manufacturer who knew or should have known of a particular way in which a product is used, is required to take that use into consideration in designing the product." The trial court did not give plaintiffs' requested jury instruction, ruling that the modified version of UCJI 20.06 covered all of the points made by the requested instruction. The jury was instructed accordingly and was given a special verdict form that contained five questions. The form asked, in part:

"(1) Was the SpeedRay Drying Lamp dangerously defective in one or more of the ways alleged by the Plaintiffs, which was a cause of injury to Mark Baker?

"* * * * *

"(3) Was Mark Baker at fault as alleged by the Defendants, which was a cause of injury to Mark Baker?"

The jury answered the first question in the negative. Consequently, it did not reach the other questions and returned a verdict for defendants, from which plaintiffs appeal.

■■■ Plaintiff's first assignment of error on appeal is that "the trial court erred in instructing the jury based on UCJI No. 20.06." As plaintiffs acknowledge on appeal, UCJI No. 20.06 is an instruction that is applicable to the issue of whether the heat lamp was defectively designed. We inquire initially whether plaintiffs' first assignment of error was preserved in the trial court for purposes of appeal.[3] Plaintiffs

---

[3] In *J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.*, 132 Or App 565, 568, 889 P2d 383, *rev den* 321 Or 47 (1995), we said:

"Our decision not to address an issue that has not been preserved is not a mere technical one. Adherence to preservation requirements is important to the proper performance of appellate review. There are at least two reasons why that is so. First, the requirement that an issue be presented to the lower tribunal in order for it to be raised on appeal serves to prevent error. If the first tribunal is given the opportunity to make a ruling, its ruling may well be correct. Relatedly, it would be a disservice to the economy of the process to require the lower tribunal to conduct further proceedings in order to rectify an error that it was never given the initial opportunity to avoid.

"The second reason is that requiring a party to present its issues at each adjudicative level is essential to a fair process for the other parties and participants. Generally, the opportunity to respond at the appellate level does not

allege that they preserved their exception to the giving of the instruction through their pretrial motion against the "affirmative defense of misuse" and through an objection made during jury instruction discussions. Plaintiffs did not except to the giving of UCJI No. 20.06 after it was given. The objection that plaintiffs made before the instruction was given referred to the written pretrial motion to strike defendants' affirmative defense of comparative negligence. Plaintiff's counsel said

> "I think, because I moved earlier to strike the defense—the affirmative defense about the cord, plugging it in, it seems to me if that's the thrust of 20.06 I should, as a matter of record—and I'm not going to argue a position or anything—but I think as a matter of record I should be opposing the giving of that instruction, because that's packaged with my belief that the evidence didn't support that affirmative defense going to the jury."

The written pretrial motion was labeled as a "motion to strike insufficient defense or for judgment on the pleadings." The motion seeks to strike from defendants' pleadings the allegations that Baker was at fault, arguing that, at most, the allegations demonstrate ordinary negligence.[4] The motion says nothing about the propriety of an instruction that pertains to the issue of whether the heat lamp was defectively designed. An exception to a proposed jury instruction on one ground does not preserve the claim of error on another ground. *Lane v. Brown*, 328 Or 42, 45 n 1, 970 P2d 206 (1998). Consequently, we hold that plaintiffs' first assignment of error is not preserved, and we decline to consider it further. ORAP 5.45(2).

■    Plaintiffs' second assignment of error is that "the trial court erred in instructing the jury on the issue of misuse of a product (UCJI 48.07)." UCJI 48.07 is also an instruction dealing with the issue of whether the heat lamp was manufactured with a design defect and not with the issue of

---

cure the denial of that opportunity in trial court and agency proceedings, where all of the factual and much of the legal development of cases must occur."

[4] Incidental carelessness or the negligent failure to discern or guard against a product defect is not a defense to a product liability action. *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 957 P2d 147 (1998).

whether Baker misused the lamp. Plaintiffs point to the same pretrial written motion, their renewal of that motion during jury instruction discussions, and another argument made to the trial court about Baker's alleged fault. For the same reasons as discussed above regarding plaintiffs' first assignment of error, this assignment also is not preserved, and we decline to consider it.

■        The third error assigned by plaintiff is that "the trial court erred in refusing to give plaintiffs' special requested jury instruction No. 10." The requested instruction combines the issue of whether there was a design defect with the issue of Baker's fault and also addresses the parties' burdens of proof. In the discussion that preceded the trial court's decision not to give the instruction, plaintiffs initially argued that, "if the 'defense of misuse' was to be submitted to the jury, this instruction should be given to inform the jury concerning the burden of proof and the meaning of misuse in a strict products liability case." Defendants opposed the instruction as "cumulative" of the uniform jury instructions that had already been agreed upon, and as "confusing" because it mixed the issues of whether the product was defective with the issue of whether Baker misused the product. Plaintiffs' counsel then acknowledged that the requested instruction:

> "talk[s] about foreseeable use as part of our burden of proof, and at the same time [talks about] misuse as part of their proof that [Baker was] at fault. So they're kind of crossing tracks here. We probably need to address the concepts separately for the defendant's conduct and the plaintiff's conduct. So I guess I would take back the idea that we put them all together in one. I think where you ended up with [UCJI] 48.07 combined with a modified second sentence from number four is an acceptable way to get that concept."

The trial court then asked, "then what's the other concept that needs to be expressed?" Counsel replied that the misuse defense needed to be addressed in more detail and that the modified instruction did not specify who would have the burden of proving Baker's alleged fault. The court stated that its standard instruction on burdens of proof for comparative fault would cover the burden of proof issue. Plaintiffs' counsel then said:

"In the course of your telling them that the defendants have the burden of proving their allegations of negligence, or—I don't know if you—If you were just going to say everybody that alleges negligence has the burden of proving it, I'd be concerned that this still could fall through the cracks. If you're saying that, and, at the same time making this example, or saying, for example the defendant's claim of misuse is their burden to prove, then, you know, I think we can get there that way."

The court asked, "If that's clear, you think the concept is made?" and plaintiffs' counsel replied, "I think so."

■■ ORCP 59 H[5] embodies a policy that requires a party to inform a trial court of any exceptions to a jury instruction. The rule expressly excepts requested instructions from its requirements because a requested instruction serves to put the court and the adverse parties on notice as to a party's position regarding the giving of an instruction. When the request is implicitly withdrawn by the requesting party, as occurred here, that conduct waives error if the failure to give the withdrawn instruction was error. Even if, in light of the jury's verdict, plaintiffs can demonstrate harm from the refusal to give the withdrawn instruction, we decline to review any potential claim of error that was invited. *Tenbusch v. Linn County*, 172 Or App 172, 18 P3d 419 (2001). Accordingly, we reject plaintiff's third assignment.

■ Plaintiff's final assignment of error is that "the trial court erred in failing to inform the jury that it was striking testimony and changing the jury instructions after the parties had completed their closing arguments."[6] The assignment relates to a decision made by the trial court after closing arguments and before the case was submitted to the jury.

---

[5] ORCP 59 H provides, in part:

"No statement of issues submitted to the jury pursuant to subsection C(2) of this rule and no instruction given to a jury shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it and unless a notation of an exception is made immediately after the court instructs the jury. Any point of exception shall be particularly stated and taken down by the reporter or delivered in writing to the judge. It shall be unnecessary to note an exception in court to any other ruling made. All adverse rulings, including failure to give a requested instruction or a requested statement of issues, except those contained in instructions and statements of issues given, shall import an exception in favor of the party against whom the ruling was made."

[6] Plaintiffs' argument under their fourth assignment of error is not entirely clear. The assignment of error refers to the failure of the court to instruct the jury

The court had initially ruled that defendants would be able to defend on the ground that plaintiff "knew or *should have known*" that the extension cord was missing the ground prong. That ruling was predicated on the proposition that the applicable standard of care required Baker to inspect any power cords before he used them in the course of his employment. Defendant had presented the testimony of an electrical engineer, Schaefer. Schaefer testified that it is a universal standard that a user of a heat lamp like the one here must use a three-pronged extension cord or socket with the lamp. He testified that if such a connection had been used in this case, there would have been no injury. He also testified that there are regulatory codes governing the type of workplace in which Baker used the heat lamp and that those codes would require an inspection of both ends of an extension cord before it is used. Plaintiffs did not move to strike Schaeffer's testimony after it was given.

Later the same day, the parties were discussing the proposed jury instructions and verdict form with the court. A dispute arose as to whether the court should instruct the jury that it could find Baker at fault if plaintiff "knew" or "should have known" that the cord was defective when he used it. Plaintiffs contended that it was proper to instruct the jury only on the "knew" allegation. The trial court again ruled that there was evidence to support the "should have known" part of the defense and that it would give an instruction that included the "should have known" language. The court also indicated that it would be considering additional authority on the issue and might reconsider its ruling.

The following day, plaintiffs' counsel again objected to the inclusion of the "should have known" language in the instruction. The court indicated that it was still considering the issue. The parties gave their closing arguments, knowing that they did not have the court's final decision as to what the

---

about its decisions after it made them. Plaintiffs also appear to argue in support of their assignment that they were prejudiced in making their closing arguments by the court's subsequent rulings. *See* UTCR 6.060(5) ("The court must inform the parties before argument of the instructions that it proposes to give."). We note that ORAP 5.45 prohibits the combining of assignments of error except for purposes of argument. Regardless, plaintiffs do not point to any place in the record where they asked the trial court for leave to reargue the case in light of the court's rulings.

final instructions to the jury would include. After the closing arguments, but before the jury was instructed, the court ruled that it would not give the "should have known" part of the instruction. It reasoned that it did not believe that there was any evidence in the record showing that Baker had an affirmative duty to inspect both ends of the cord.[7] The court then ruled that it would strike Schaefer's testimony as it applied to the allegation of Baker's affirmative duty to inspect the cord. The court then said *sua sponte,*

> "I've considered advising the jury of this, because it has been stated before them. I do not feel it necessary to advise the jury that it's stricken. I feel that simply not presenting that issue to them disposes of the testimony, as would any other irrelevant testimony, to have to be stricken specifically at this stage of the trial."

Plaintiff's counsel then asked the court whether it would tell the jury "something about how we've been discussing things this morning, and they may be a little different from—" The court replied, "I'll try to—I'll try to soothe them." Plaintiffs' counsel continued, "And that it may be a little different than the way we argued it, so they should listen carefully? I assume you'll tell them something like that." The court replied, "I'm not going to tell them that, because it's really not." Plaintiffs voiced no further objection to the court's proposal. The jury was instructed that it could find that Baker had been comparatively negligent if it found that he "knew" the power cord was missing its third prong. The jury was not told to disregard Schaeffer's testimony, and plaintiffs did not except further to any failure to give instructions on this subject after the jury retired to deliberate.

Plaintiffs' argument on appeal is that the court should have instructed the jury that it was striking both the allegation that Baker should have known of the defective extension cord from defendants' pleadings and Schaeffer's testimony as it pertained to that allegation. Again, our initial inquiry is whether plaintiffs made that position adequately

[7] The court dismissed Schaeffer's conclusion that Baker had such an obligation by ruling that the way the lamp was used in the City of Portland shop fell within one of the exceptions to the duty to inspect requirement about which Schaeffer had testified.

known to the trial court. It is axiomatic that a party must submit to the court the specific instruction it wants before it can assign the failure to give such an instruction as error on appeal. ORCP 59 A requires that,

> "Unless otherwise requested by the trial judge on timely notice to counsel, proposed instructions shall be submitted at the commencement of the trial. *Proposed instructions upon questions of law developed by the evidence, which could not be reasonably anticipated, may be submitted at any time before the court has instructed the jury.* The number of copies of proposed instructions and their form shall be governed by local court rule." (Emphasis added.)

As we have said, ORCP 59 H requires an express exception unless there has been a previously written, requested instruction tendered.

■ In *Worley v. OPS*, 69 Or App 241, 686 P2d 404, *rev den* 298 Or 334 (1984), the defendant contended that the court erred in failing to properly instruct the jury on the issue of privilege in a defamation case. We ruled that the defendant's requested instruction on privilege was properly refused as an incorrect statement of law. As to the instruction that was given by the trial court, we held that it impermissibly permitted the jury to conclude that the privilege did not exist, even though the facts surrounding the publication were not in dispute. However, we observed that the defendant did not except below to the instruction that the trial court gave, and we affirmed on the ground that the error claimed on appeal was not preserved. We explained,

> "ORCP 59 H also states that an exception is deemed taken if the court refuses to give an instruction that a party submits. *The party, however, must submit to the court the specific instruction it wants.* Defendants do not argue here, except for their [properly denied requested jury instruction] that the court should have given any instruction that defendants submitted but that the court did not give." *Worley,* 69 Or App at 249 (emphasis added).

ORCP 59 and our holding in *Worley* inform the analysis in this case. Plaintiffs do not assign error to any instruction that the court gave to the jury. Rather, their complaint on appeal is about the failure of the trial court to tell

the jury that it had stricken the allegation that Baker should have known about the defective extension cord and that the jury was not to consider Schaeffer's testimony on that issue. Necessarily, any instruction would have also had to tell the jury that Schaeffer's testimony could be considered on the issue of whether defendants' lamp suffered from a defective design. Faced with that dilemma, the trial court chose to say nothing at all to the jury about its rulings. Again, it is questionable whether the jury even considered Schaeffer's testimony on the issue of Baker's fault in light of its verdict that the lamp was not dangerously defective. Nonetheless, the court's decision to say nothing to the jury is clear from the court's final comment to plaintiff's counsel. The question then is what ORCP 59 H requires under these circumstances in order to preserve the issue of the court's failure to instruct the jury on the effect of its rulings. The rule of *Worley* answers the query. If a party wishes to rely on the failure to give a requested instruction at trial as error on appeal, it must formulate a correct instruction and request that the trial court give it. That did not occur here.

Affirmed.